UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASMINE ANDERSON AND
LINDSEY WALTON,

       Plaintiffs,

                                    Case No. 11-15225

v.

                                    Paul D. Borman
                                    United States District Judge

CITY OF OAK PARK AND OFFICER
RYAN BOLTON,

                                    Michael Hluchaniuk
                                    United States Magistrate Judge

       Defendants.
_____/

OPINION AND ORDER GRANTING DEFENDANT CITY OF OAK PARK AND BOLTON'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 46) AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 44)

       This action arises from the strange circumstance of Plaintiffs' credit being mistakenly approved for an automotive lease and the subsequent involvement of law enforcement with the repossession of that leased vehicle.

       Plaintiffs Jasmine Anderson and Lindsey Walton originally filed a complaint on November 29, 2011 against the dealership, McInerney, Inc. ("McInerney"), the City of Oak Park and an unnamed Oak Park police officer. (ECF No. 1). Thereafter, Defendant McInerney filed a Counter Complaint alleging breach of contract against Plaintiffs. (ECF No. 10). On April 25, 2012, pursuant to a stipulation, Plaintiffs filed an Amended Complaint that substituted Defendant Officer Ryan Bolton ("Officer Bolton") for "officer John Doe", and omitted a previously asserted claim for intentional infliction of emotional distress. (ECF No. 27, Am. Compl.).

       On December 21, 2012, Defendant McInerney file a motion for summary judgment. (ECF No. 37). Then, on February 25, 2013, Plaintiffs filed a motion for summary judgment

against Defendants City of Oak Park and Officer Bolton (ECF No. 44), and on February 28, 2013 Defendants City of Oak Park and Bolton filed their own motion for summary judgment against Plaintiffs (ECF No. 46). All of the motions were fully briefed and this Court held oral argument for all three motions on September 20, 2013.

On February 6, 2014, Plaintiffs and Defendant McInerney dismissed their complaints against each other pursuant to a stipulated dismissal. (ECF No. 54). Plaintiffs and Defendants City of Oak Park and Officer Bolton continue in this case.

The remaining motions are Plaintiffs' and Defendant City of Oak Park and Officer Bolton's cross motions for summary judgment. For the following reasons, the Court DENIES Plaintiffs' motion for summary judgment, and GRANTS Defendants City of Oak Park and Officer Bolton's motion for summary judgment.

## II. BACKGROUND

In late 2010 Plaintiff Anderson leased a new 2010 black Dodge Charger (the "vehicle") from Defendant McInerney. Plaintiff Walton, Plaintiff Anderson's cousin, was a co-signor on the lease. (Defs.' Ex. C, Anderson Dep. at 40-41).[1] After the paperwork was completed and sometime after Plaintiff Anderson drove away with the vehicle, Defendant McInerney was notified that its lender was denying Plaintiffs' credit application.

On December 23, 2010, Defendant McInerney acted to repossess the vehicle from Plaintiff Anderson. To this end, Defendant McInerney contacted Paul Stallings of Paul's Towing and asked that he repossess Plaintiff Anderson's vehicle on Defendant McInerney's

---

[1] Unless otherwise noted, all exhibits referenced are attached to Defendants' motion for summary judgment. (ECF No. 46).

behalf. (Ex. A, Stallings Dep. at 10-11).

Stallings met with Jack McInerney, Jr. at the dealership and testified that he was supplied a handwritten letter on dealership letterhead regarding the repossession and allegedly fraudulent paperwork submitted to the dealership.[2] (Stallings Dep. at 11). After leaving the dealership, Stallings first visited Plaintiff Anderson's residence and determined the vehicle was there. (Stallings Dep. at 12). Then, as was his habit, Stallings drove to the police station to notify them he was going to be repossessing a vehicle at Plaintiff Anderson's address. (*Id*. at 11-13, 18-19). Stallings testified he wanted the police to know the car was not being stolen. (*Id*. at 12-13). Officers at the station asked Stallings to wait, and then after a short time, instructed him to proceed to Plaintiff Anderson's residence. (*Id*. at 13-14). Stallings did not request that the police be present during the repossession. (*Id*. at 13).

When Stallings arrived at Plaintiff Anderson's address, there were already three police cars parked on the block and visible from Plaintiff Anderson's front porch. (*Id*. at 15). Defendant Officer Bolton was one of the officers present at the repossession. Defendant Officer Bolton testified that upon Stallings' arrival they spoke regarding the repossession. (Ex. B, Bolton Dep. at 20-21). Stallings represented he had paperwork for the repossession. (Stallings Dep. at 19-20). Defendant Officer Bolton initially testified Stallings had a court order for the repossession, but later clarified that he could not remember what paperwork Stallings actually produced. (*Id*. at 21-22, 30).

At this point, Defendant Officer Bolton and another unidentified officer knocked on Plaintiff Anderson's door and spoke with Plaintiff Anderson's mother, Sheila Anderson. (Bolton

---

[2] This letter has never been found or produced.

3

Dep. at 20-21, 23-24; Stallings Dep. at 15; Anderson Dep. at 129). Stallings never approached Plaintiff Anderson's residence. (Stallings Dep. at 15).

Defendant Officer Bolton advised Sheila Anderson that a company was there to repossess a vehicle, and she explained to him that they were having an issue with the finance company. (Bolton Dep. at 24). Defendant Officer Bolton recounted the exchange as one in which he was told that "there had been an issue between whoever the finance company was and the owner of the car for a discrepancy in what the payments were supposed to be from the initial lease. And they had been dealing with it..." (Bolton Dep. at 24:12-16). In response, Defendant Officer Bolton told Plaintiff Anderson's mother that "it's simply a civil issue. They can either turn over their keys because they're going to take the car either way." (*Id*. at 24:19-22). Defendant Officer Bolton further testified that he told Anderson's mother that "it's a civil issue and she needs to [] deal with the dealership and it's not something – it's a civil issue. It's not a criminal issue. You've got to get a hold of an attorney if you want to fight the repossession and everything else." (*Id*. at 26:3-9). He also advised Sheila Anderson to retrieve any personal items out of the car "because they're going to take the vehicle." (*Id*. at 24-25:2-3). Defendant Officer Bolton stated that at some point another woman came out and removed some possessions from the vehicle. (*Id*. at 25).

Plaintiff Anderson was sleeping at the time Defendant Officer Bolton knocked on her door and alerted her mother to the repossession.[3] (Anderson Dep. at 129). She testified that her mother woke her up and told her the vehicle was being repossessed. (*Id*.). Plaintiff Anderson stated she did not speak with the police officer at all, explaining "I didn't speak with anybody.

---

[3] Plaintiff Walton was not present at the time of the repossession. (Anderson Dep. at 131).

My mom did." (*Id*. at 129:16). Plaintiff Anderson also testified that she "voluntarily gave her keys" to Defendant Officer Bolton, stating that "[h]e just asked for them and I gave them to him." (*Id*. at 94-95, 133:25). Plaintiff Anderson also noted that Defendant Officer Bolton did not "demand" the keys. (*Id*. at 133). Both Stallings and Defendant Officer Bolton claim Plaintiff Anderson voluntarily turned over her keys to Stallings not Defendant Officer Bolton. (Stallings Dep. at 20; Bolton Dep. at 25). Plaintiff Anderson further testified that she did not feel threatened by the officers but she did feel embarrassed, sad, and upset about the repossession. (Anderson Dep. at 131, 135).

The police remained at the Plaintiff Anderson's residence until the repossession was complete, somewhere between ten to twenty minutes total. (Stallings Dep. at 23; Bolton Dep. at 26). Plaintiff Anderson testified that her involvement with the repossession lasted "about, like, five minutes, something like that." (Anderson Dep. at 96:2). After she handed her keys to Bolton, Plaintiff Anderson estimated that she spent "maybe three minutes" talking to her mother and then she went back to her room and went back to sleep. (*Id*. at 96:7-8).

## II. STANDARD OF REVIEW

The Plaintiffs and Defendants City of Oak Park and Officer Bolton have moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. This rule provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Matsushita Electric Industrial Co., Ltd., et al. v. Zenith Radio Corp., et al.*, 475 U.S. 547, 587 (1986). Once this burden is met, the opposing party must produce some

facts showing there is a genuine issue for trial. *Id*. If a rational trier of fact could not, based on the record as a whole, find in favor of the party opposing summary judgment, then summary judgment is granted in favor of the moving party. *Id*. The Court must view the facts and draw all reasonable inferences in favor of the non-moving party. The Court does not determine if all of the evidence favors one side or the other, but "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In other words, "[s]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact[.]" *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995).

Defendant City of Oak Park has also moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Defs.' Mot. at ¶ 2). Under Rule 12(c), "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (citation omitted). This inquiry "is the same as a review under Rule 12(b)(6); [a court] must 'construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief.'" *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006) (quoting *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)). The motion is granted only if "no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Tucker*, 539 F. 3d at 549.

"It is well established that 'Rule 12(c) requires only one action by the district court for the conversion to a summary judgment motion to occur: failure to exclude presented outside evidence.'" *Northville Downs v. Graholm*, 622 F.3d 579, 585 (6th Cir. 2010) (quoting *Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 f.3d 494, 503 (6th Cir. 2006)). The Sixth Circuit has made clear that a district court "need not actually rely upon materials outside of the pleadings to require the conversion of a Rule 12(c) motion into a motion for summary judgment." *Id.*

### III. ANALYSIS

After the stipulated dismissal of Plaintiffs' claims against Defendant McInerney, only Count VI of Plaintiffs' Amended Complaint, "Deprivation of Civil Rights §1983", remains viable against Defendants City of Oak Park and Officer Bolton. In the Amended Complaint, Plaintiffs appear to assert that Defendant Officer Bolton's actions violated: (1) Plaintiffs' right to Due Process pursuant to the Fourteenth Amendment; (2) Plaintiffs' right to be free from unreasonable search and seizure pursuant to the Fourth Amendment; and (3) Plaintiffs' right to be guaranteed equal protection under the laws secured by the Fourteenth Amendment. (*See* Am. Compl. at ¶¶ 79).

Plaintiffs' motion seeks summary judgment solely on its § 1983 claim based on a violation of the Fourth Amendment. (Pls.' Br. at 1). Therefore, Plaintiffs' summary judgment motion is more accurately described as a "motion for partial summary judgment" and the Court shall refer to it as such. The Court also recognizes that Defendants City of Oak Park and Officer Bolton's motion seeks summary judgment on all of the § 1983 claims set forth against Defendants in Plaintiff's Amended Complaint. However, Plaintiffs failed to respond in their

briefing or at oral argument to Defendants' arguments regarding their § 1983 claim based on the Equal Protection Clause. The Court of Appeals for the Sixth Circuit has made clear that "a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (collecting cases). Therefore, the Court finds that Plaintiffs have abandoned their claims against Defendants based on the Equal Protection Clause and the Court need not address those claims.

**A.     Claims against Officer Ryan Bolton**

To state a claim pursuant to 42 U.S.C. § 1983, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)). Plaintiffs assert that Defendant Officer Bolton acted while under the color of state law and his actions deprived them of their rights to be free from an unreasonable seizure under the Fourth Amendment and a denial of Due Process under the Fourteenth Amendment.

Pursuant to the Fourteenth Amendment, procedural due process requires "notice and a prior hearing before a state can assist a secured creditor in the repossession of a debtor's property." *Barrett v. Harwood*, 189 F.3d 297, 301 (2d Cir. 1999) (citation omitted). The Fourth Amendment sets forth the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures..." U.S. Const. Amend. IV. The "Fourth Amendment's prohibition of unreasonable seizures extends to seizures of property regardless of

whether the possessor has a privacy interest in the property." *Soldal v. Cook Cnty.*, 506 U.S. 56, 62-63 (1992). Property is considered seized "when there is some meaningful interference with an individual's possessory interests in that property." *Id*. at 63. "A constitutional violation occurs only where the seizure is objectively unreasonable, *United States v. Place*, 462 U.S. 696, 701 (1983), a determination that entails a careful balancing of governmental and private interests." *Hensley v. Gassman*, 693 F.3d 681, 688 (6th Cir. 2012) (internal quotation omitted).

The Court recognizes that when a plaintiff makes a claim pursuant to 42 U.S.C. § 1983 for the repossession of a vehicle, the inquiries based on the Fourth and Fourteenth Amendments are the same. *See Meyers v. Redwood City*, 400 F.3d 765, 771 (9th Cir. 2005); *Arnold v. Midwest Recovery*, 2011 WL 309000, at *7 (E.D. Mich. Jan. 27, 2011) (recognizing same); *see also Barrett*, 189 F.3d at 301 (seminal case regarding a debtor's § 1983 due process claim in which the court evaluated the officer's actions during a repossession, and relied upon by the Sixth Circuit in *Hensley* in evaluating a debtor's Fourth Amendment claim regarding a repossession).

In the instant case, Stallings sought to repossess Plaintiffs' vehicle pursuant to Michigan's version of the Uniform Commercial Code. *See* MICH. COMP. LAWS § 440.9609(2). This statute allows "a secured party [to] proceed ... without judicial process if it proceeds without breach of the peace." *See Ansley v. Conseco Fin. Serving Corp.*, 2002 WL 31955217, at *2 (Mich. Ct. App. Dec. 17, 2002). It is "well-established law in this circuit [] that the private creditor who alone repossesses secured collateral does not act under color of state law. Specifically, self-help repossession ... does not constitute state action." *United States v. Colman*, 628 F.2d 961, 963 (6th Cir. 1980) (citation to the UCC omitted). The pertinent inquiry therefore

becomes whether Defendant Officer Bolton meaningfully interfered with Plaintiffs' possessory interests such that his participation transformed a private repossession into state action. Indeed, the Sixth Circuit recognizes that when a plaintiff "seeks to hold government actors liable for participation in repossession, state action is usually the central issue." *Hensley*, 693 F.3d at 689.

In *Barrett v. Harwood*, 189 F.3d 297 (2d Cir. 1999), the Second Circuit described cases of this nature as falling along a spectrum of police involvement. *Id.* at 302 ("[N]o bright line has been drawn delineating the exact point at which an officer's presence and activities at the scene of a repossession become state action in aid of the repossession."); *See also Hensley*, 693 F.3d 690-91 (describing *Barrett* as the "most helpful case" in evaluating whether state action has occurred). On one end of the spectrum are those cases in which there is little to no involvement by the police officers in the repossession and no state action is found. *Barrett*, 189 F.3d at 302. On the opposite end of the spectrum are those cases in which a court found the police officers' actions amounted to state action or created an issue of fact for a jury. *Id*. The *Barrett* court relied upon *United States v. Coleman*, 628 F.2d 961 (6th Cir. 1980), at the *de minimus* end of the spectrum. In *Coleman*, the police were merely parked around the corner from where the repossession was occurring and were standing by in case of trouble. *Coleman*, 628 F.2d at 964. Near the middle of the spectrum, where there is more involvement by the police officers but not enough to constitute state action, the Second Circuit relied upon *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 510-12 (5th Cir. 1980). *Barrett*, 189 F.3d at 302. In *Menchaca*, the police officers were summoned after the debtor resisted attempts by the repossessor to take the vehicle. *Menchaca*, 613 F.2d at 510-12. That court found there was no state action when the officers advised the debtor that they were there only to "quiet a reported disturbance" but the debtor

10

claimed the officers had threatened to arrest her if she did not turn over the keys. *Id*. at 510-13.

Finally, at the other end of spectrum, courts have found that as "an officer begins to take a more active hand in the repossession, and as such involvement becomes increasingly critical", private repossession is transformed into state action. *Id*. At this far end of the involvement spectrum the Second Circuit relied upon two cases in which the police participation chilled the plaintiff's right to object to the repossession such that each case survived summary judgment. In the first case, *Jones v. Gutschenritten,* 909 F.2d 1208 (8th Cir. 1990), the debtor observed the police standing with the repossessor who was disconnecting electricity and the officer did not leave until after the disconnection was complete. *Id*. at 1210-13. In the second case, *Booker v. City of Atlanta*, 776 F.2d 272 (11th Cir. 1984), the police officer arrived with the repossessor and "gave the repossession a cachet of legality and had the effect of intimidating Booker into not exercising his right to resist, thus facilitating the repossession." *Id*. at 274. Both of these cases are consistent with the Sixth Circuit's finding that "numerous state courts cases and secondary authorities have recognized that an objection, particularly when it is accompanied by physical obstruction, is the debtor's most powerful (and lawful) tool in fending off an improper repossession because it constitutes a breach of the peace requiring the creditor abandon his efforts to repossess." *Hensley*, 693 F.3d at 689; *see also Harris v. City of Roseburg*, 664 F.2d 1121, 1127 (9th Cir. 1981) (holding there may be a violation under § 1983 when the "officer assists in effectuating a repossession over the objection of a debtor or so intimidates a debtor as to cause him to refrain from exercising his legal right to resist a repossession.").

In the instant case, Defendant Officer Bolton arrived at Plaintiff Anderson's house before the repossessor, along with a total of three police cars. The repossessor had not specifically

11

requested a police presence. Defendant Officer Bolton, having been apprised that there was a dispute with the finance department regarding the vehicle's lease, advised Plaintiff Anderson's mother that the repossession was a civil matter and Stallings was going to take the car "either way." (Bolton Dep. at 24). Plaintiff Anderson also testified that Defendant Officer Bolton requested that Plaintiff Anderson give him the keys to her vehicle.

Plaintiffs argue that the presence of three police cars and the fact Defendant Officer Bolton "compelled" Plaintiff Anderson to turn over her keys transforms his involvement in the repossession from a simple peace keeping presence into state action. To this end, Plaintiffs attempt to construe these facts as analogous to *Hensley* where the officer ignored the debtor's protest and explanation and told the debtor that the repossessor was still going to take her vehicle. *Hensley*, 693 F.3d at 691. Here, Plaintiffs argue that just as the officer in *Hensley* could have verified the debtors' story, Defendant Bolton "could have verified Plaintiff Anderson's claim of a wrongful repossession". (ECF No. 44, Pls.' Br. at 10). Plaintiffs also argue that the police arrival with, and at the request of Stallings, supports their argument of state action. *See Booker*, 776 F.2d at 274; *see also Hensley*, 693 F.3d at 691 (finding the fact the officers arrived with and at the request of the repossessor was one of the factors that supported a finding of state action).

The Court finds Plaintiffs' arguments unpersuasive because Plaintiff Anderson was asleep when the police and Stallings arrived and therefore when the police arrived is not relevant. Moreover, there is also nothing in the record indicating that Plaintiff Anderson voiced a protest to Defendant Bolton or that she was advised by Defendant Bolton that the repossession would inevitable. In fact, Plaintiff Anderson testified that she did not speak with an officer.

(Anderson Dep. at 129). Plaintiff Anderson also testified that her hand off of the keys to Defendant Officer Bolton was "voluntary" and she never felt threatened during her five minute involvement with the repossession. (*Id.* 94-95, 131-35).

The Court finds the facts of the instant action are more analogous to those cases falling in the middle of the spectrum where Defendant Bolton's involvement in the repossession was more than merely standing by but less than such overt action that his involvement transformed the repossession into a state action. The heavy presence of the police (three police cars at Plaintiff Anderson's residence), Defendant Bolton's decision to knock on the door and interact with Plaintiff Anderson (and her mother) as well as asking for Plaintiff Anderson's keys are facts that differentiate this case from those in which the police are merely peace keepers and bystanders to the repossession. However, in this case, Plaintiff Anderson was asleep when the officers and the repossessor arrived, she never voiced a protest to the repossession, or claimed that she would have but for Defendant Bolton's presence, she also testified that she did not have any interaction with Defendant Bolton save "voluntarily" handing over her keys, and she never felt threatened. In fact, after handing her keys to Defendant Bolton, Plaintiff retrieved her belongings, spoke briefly with her mother, and went back to sleep.

Given the totality of these facts, the Court finds Plaintiff Anderson has failed to raise material issues of fact regarding whether Defendant Bolton's actions prevented Plaintiff Anderson from contesting the repossession or had a chilling affect on her ability to do so. Critically, the Court notes that Defendant Bolton's advice regarding the legality of the repossession and his statement that the repossession was inevitable were not made to Plaintiff

13

Anderson or in her presence.[4] These comments were made to Plaintiff Anderson's mother, Sheila Anderson, who is not a plaintiff in this action and is not alleged to have a possessory interest in the vehicle. While there may be a dispute regarding whether Plaintiff Anderson handed her keys to Stallings or Defendant Bolton, she explicitly testified that she did so "voluntarily" and she did not feel threatened by Defendant Bolton. Therefore, the Court finds Defendant Bolton's actions do not constitute state action and Plaintiffs' § 1983 claims based on the Fourth and Fourteenth Amendment fail.

Because the Court finds that Defendant Bolton's actions do not constitute a constitutional violation, there is no need for the Court to determine whether he is entitled to qualified immunity.

**B.     Claims against Defendant the City of Oak Park**

Defendants argue that Plaintiffs have failed to state a claim against Defendant the City of Oak Park pursuant to Federal Rule of Civil Procedure 12(c) and 56. However, as Plaintiffs' response and Defendants' Reply rest upon deposition testimony outside the scope of Plaintiffs' Amended Complaint, the Court shall treat this motion as a motion for summary judgment.

A municipality may be held liable for a constitutional violation under § 1983 if a municipal custom or policy is the motivating force behind the violation. *See Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978) (finding that the drafters of § 1983 intended only to impose liability on a government that "causes" an employee to violation another persons's rights pursuant to an official policy). To prevail on such a claim, the plaintiff must evidence that the

---

[4] There is also nothing in the record indicating that Plaintiff Anderson's mother relayed any information to her regarding the conversation with Defendant Bolton.

alleged violation of his constitutional rights was caused by a municipal policy or custom. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). "That is to say, the liability of counties and other local governments under § 1983 depends solely on whether the plaintiff's constitutional rights have been violated as a result of a 'policy' or 'custom' attributable to the county or local government." *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). "A municipality can be shown to have a 'custom' causing constitutional violations, even if that custom was not formally sanctioned, provided that the plaintiff offers proof of policymaking officials' knowledge and acquiescence to the established practice." *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 389 (1989) (affirming that a municipality may be "liable under § 1983 only where the municipality itself causes the constitutional violation at issue" and that the policy is the "moving force [behind] the constitutional violation").

The Sixth Circuit has identified four ways a plaintiff may prove the existence of a municipality's illegal custom or practice:

> (1) the existence of a clear and persistent pattern of illegal conduct;
>
> (2) notice or constructive notice on the part of the defendant;
>
> (3) the defendant's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and
>
> (4) that the defendant's custom was the 'moving force' or direct causal link in the constitutional deprivation.

*Thomas*, 398 F.3d at 429 (citation and internal alterations omitted). Where there is no formal policy, the pertinent inquiry becomes whether there is a policy or custom that although not explicitly authorized "is so permanent and well settled as to constitute a custom or usage with the

15

force of law." *Jones v. Muskegon County*, 625 F.3d 935, 946 (6th Cir. 2010) (citation omitted).

As an initial matter, as the Court has found there was no constitutional violation committed by Defendant Bolton, Plaintiffs' claim of municipal liability pursuant to § 1983 "necessarily fails." *Boykin v. Van Buren Twp.*, 479 F.3d 444, 450 (6th Cir. 2007) (citing *Blackmore v. Kalamazoo County*, 390 F.3d 890, 900 (6th Cir. 2004) (holding "[a] municipality or county cannot be liable under 1983 absent an underlying constitutional violation by its officers.").

Alternatively, Plaintiffs' claim also fails on its merits. In the instant case, Plaintiffs do not evidence a "persistent pattern" of conduct nor do Plaintiffs argue that Defendant City of Oak Park had notice of Defendant Bolton's actions or that his actions had its tacit approval. Plaintiffs also cannot show that any custom or policy of Defendant City of Oak Park was the "moving force" behind the constitutional deprivation. Rather, Plaintiffs rely solely upon the testimony of the Director of Public Safety for the City of Oak Park, Steve Cooper, to establish that there is no formal policy regarding repossessions and to establish that there was an informal policy that officers were there "to keep the peace and mediate ... the [repossession] situations to a point that we can."[5] (ECF No. 51, Pls.' Resp. Ex. D, Cooper Dep. at 12). Plaintiffs then argue that

---

[5] Steve Cooper's testimony in relevant part states:

> We have no legal authority to enforce noncriminal issues. It would be considered a civil matter. In those matters what we could do is we could offer our assistance to stand by, just to make sure there's no physical confrontation or an incident that turns into a physical confrontation. We're there strictly, like I said, to keep the peace and mediate, if that's I guess an acceptable word, the situations to a point that we can.

(ECF No. 51, Pls.' Resp., Ex. D, Cooper Dep. at 12). Defendant Bolton confirmed this "general rule" in his testimony, stating that the role of the officer during a repossession is to "stand by"

Defendant Bolton facilitated the repossession in this action in *contravention* of that general policy. (Pls.' Resp. at 10).

Plaintiffs' argument is without merit and without any citation to case law. Indeed, Plaintiffs fail to show how an illegal city policy or custom can be evidenced by a single officer's actions that violate the legal policy. Further, to the extent Plaintiffs attempt to argue the mere presence of other police officers at the repossession evidences a policy or custom, this argument is also unsupported by the record or case law.

For all these reasons, the Court finds Plaintiffs' § 1983 claim against Defendant City of Oak Park fails and must be dismissed.

## IV. CONCLUSION

Therefore, the Court DENIES Plaintiffs' motion for partial summary judgment (ECF No. 44, GRANTS Defendants' motion for summary judgment (ECF No. 46), and DISMISSES this action WITH PREJUDICE.

SO ORDERED.

s/Paul D. Borman<br>
PAUL D. BORMAN<br>
UNITED STATES DISTRICT JUDGE

Dated: August 22, 2014

---

and "mediate if there's a problem or to stand by and, you know, hopefully to prevent or hopefully there is no problem ...". (Bolton Dep. at 9:9-13).

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 22, 2014.

                                              s/Deborah Tofil
                                              Case Manager