UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASMINE ANDERSON AND
LINDSEY WALTON,

               Plaintiffs,

                                      Case No. 11-15225

v.

                                        Paul D. Borman
                                        United States District Judge

CITY OF OAK PARK AND OFFICER
RYAN BOLTON,

                                        Michael Hluchaniuk
                                        United States Magistrate Judge

               Defendants.
_____/

OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS CITY OF OAK PARK
AND OFFICER BOLTON'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 46); AND
DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 44)

      This action arises from the strange circumstance of Plaintiffs' credit being mistakenly approved for an automotive lease and the subsequent involvement of law enforcement with the repossession of that leased vehicle.

      Plaintiffs Jasmine Anderson and Lindsey Walton originally filed a complaint on November 29, 2011 against the dealership, McInerney, Inc. ("McInerney"), the City of Oak Park and an unnamed Oak Park police officer. (ECF No. 1). Thereafter, Defendant McInerney filed a Counter Complaint alleging breach of contract against Plaintiffs. (ECF No. 10). On April 25, 2012, pursuant to a stipulation, Plaintiffs filed an Amended Complaint that substituted Defendant Officer Ryan Bolton ("Officer Bolton") for "officer John Doe", and omitted a previously asserted claim for intentional infliction of emotional distress. (ECF No. 27, Am. Compl.).

      On December 21, 2012, Defendant McInerney file a motion for summary judgment.

(ECF No. 37).  Then, on February 25, 2013, Plaintiffs filed a motion for summary judgment against Defendants City of Oak Park and Officer Bolton (ECF No. 44), and on February 28, 2013, Defendants City of Oak Park and Officer Bolton filed their own motion for summary judgment against Plaintiffs (ECF No. 46).  All of the motions were fully briefed and this Court held oral argument for all three motions on September 20, 2013.

On February 6, 2014, Plaintiffs and Defendant McInerney dismissed their complaints against each other pursuant to a stipulated dismissal.  (ECF No. 54).  Plaintiffs and Defendants City of Oak Park and Officer Bolton continue in this case.

The remaining motions before this Court are Plaintiffs' and Defendants City of Oak Park and Officer Bolton's cross motions for summary judgment.  For the following reasons, the Court denies Plaintiffs' motion for summary judgment, and grants in part and denies in part Defendants City of Oak Park and Officer Bolton's motion for summary judgment.

## II.  BACKGROUND

In late 2010 Plaintiff Anderson leased a new 2010 black Dodge Charger (the "vehicle") from Defendant McInerney.  Plaintiff Walton, Plaintiff Anderson's cousin, was a co-signor on the lease.  (Defs.' Ex. C, Anderson Dep. at 40-41).[1]  After the paperwork was completed and sometime after Plaintiff Anderson drove away with the vehicle, Defendant McInerney was notified that its lender was denying Plaintiffs' credit application.

On December 23, 2010, Defendant McInerney acted to repossess the vehicle from Plaintiff Anderson.  To this end, Defendant McInerney contacted Paul Stallings of Paul's Towing

_____

[1] Unless otherwise noted, all exhibits referenced are attached to Defendants' motion for summary judgment.  (ECF No. 46).

2

and asked that he repossess Plaintiff Anderson's vehicle on Defendant McInerney's behalf. (Ex. A, Stallings Dep. at 10-11).

Stallings met with Jack McInerney, Jr. at the dealership and testified that he was supplied a handwritten letter on dealership letterhead regarding the repossession and allegedly fraudulent paperwork submitted to the dealership.[2] (Stallings Dep. at 11). After leaving the dealership, Stallings first visited Plaintiff Anderson's residence and determined the vehicle was there. (Stallings Dep. at 12). Then, as was his habit, Stallings drove to the police station to notify them he was going to be repossessing a vehicle at Plaintiff Anderson's address. (*Id.* at 11-13, 18-19). Stallings testified he wanted the police to know the car was not being stolen. (*Id.* at 12-13). Officers at the station asked Stallings to wait, and then after a short time, instructed him to proceed to Plaintiff Anderson's residence. (*Id.* at 13-14). Stallings did not request that the police be present during the repossession. (*Id.* at 13).

When Stallings arrived at Plaintiff Anderson's address, there were already three police cars parked on the block and visible from Plaintiff Anderson's front porch. (*Id.* at 15). Defendant Officer Bolton was one of the officers present at the repossession. Defendant Officer Bolton testified that upon Stallings' arrival they spoke regarding the repossession. (Ex. B, Bolton Dep. at 20-21). Stallings testified that he gave the letter he received from the dealership to the officer. (Stallings Dep. at 19-20). Defendant Officer Bolton initially testified that Stallings represented he had a court order for the repossession, but later clarified that he could not remember what paperwork Stallings actually possessed. (*Id.* at 21-22, 30).

At this point, Defendant Officer Bolton and another unidentified officer knocked on

---

[2] This letter has never been found or produced.

3

Plaintiff Anderson's door and spoke with Plaintiff Anderson's mother, Sheila Anderson. (Bolton Dep. at 20-21, 23-24; Stallings Dep. at 15; Anderson Dep. at 93, 129). Stallings never approached Plaintiff Anderson's residence. (Stallings Dep. at 15).

Defendant Officer Bolton advised Plaintiff Anderson's mother that a company was there to repossess a vehicle, and she explained to him that they were having an issue with the finance company. (Bolton Dep. at 24). Defendant Officer Bolton recounted the exchange as one in which he was told that "there had been an issue between whoever the finance company was and the owner of the car for a discrepancy in what the payments were supposed to be from the initial lease. And they had been dealing with it..." (Bolton Dep. at 24:12-16). Defendant Officer Bolton testified that he then advised Sheila Anderson that, "it's simply a civil issue. They can either turn over their keys because they're going to take the car either way." (*Id.* at 24:19-22). Defendant Officer Bolton then told Sheila Anderson that there was time for her to retrieve personal effects from the vehicle "because the guy is going to take the car to a secure impound lot, so if there's valuable items in the car they want to retrieve from the vehicle, now would be the time to do it because they're going to take the vehicle." (*Id.* at 24-25).

It appears at this time that Sheila Anderson went into her house and woke up her daughter, Plaintiff Anderson.[3] (*See Id.* at 25; Anderson Dep. at 129). Plaintiff Anderson testified that her mother woke her up and told her the vehicle was being repossessed. (*Id.*). Plaintiff Anderson stated she did not speak with the police officer at all, explaining "I didn't speak with anybody. My mom did." (*Id.* at 129:16). Despite claiming not to have spoken with any of the officers, Plaintiff Anderson also testified that she "voluntarily gave her keys" to Defendant

---

[3] Plaintiff Walton was not present at the time of the repossession. (Anderson Dep. at 131).

4

Officer Bolton, stating that "[h]e just asked for them and I gave them to him." (*Id.* at 94-95, 133:25). Plaintiff Anderson was also clear that she gave the keys to the officer and not Stallings, despite both Stallings and Defendant Officer Bolton's testimony she handed her keys to Stallings. (Anderson at 133; Stallings Dep. at 20; Bolton Dep. at 25). Defendant Bolton testified that he stated, "do you want to turn over the keys to the two truck driver to be able to load it up easier than towing it out of your driveway, and they voluntarily turned over the keys." (Bolton Dep. at 25:17-21). He then recounted that the woman who collected possessions from the car was "upset and agitated over the repossession and I know there was some discussion that, you know, it's a civil issue and she need to, you know, deal with the dealership and it's not something – it's a civil issue, it's not a criminal issue. You've got to get a hold of an attorney if you want to fight the repossession and everything else." (*Id.* at 26:1-9). Stallings testified that he only spoke to a young woman who came out of the house during the repossession process regarding the fact she wanted to retrieve her possessions from the vehicle. (Stallings Dep. at 16:19).

Plaintiff Anderson further testified that she did not feel threatened by the officers but she did feel embarrassed, sad, and upset about the repossession. (Anderson Dep. at 131, 135).

The police officers remained at the Plaintiff Anderson's residence until the repossession was complete, somewhere between ten to twenty minutes total. (Stallings Dep. at 23; Bolton Dep. at 26). The police report authored by Defendant Officer Bolton stated: "U/S assisted in repossession of listed 2010 Dodge Charger at listed address. U/S met with Jasmine Anderson who voluntarily turned over vehicle keys without incident." (ECF No. 44, Pls.' Br. Ex. 3, Police Report at 2).

5

## II. STANDARD OF REVIEW

The Plaintiffs and Defendants City of Oak Park and Officer Bolton have moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. This rule provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Matsushita Electric Industrial Co., Ltd., et al. v. Zenith Radio Corp., et al.*, 475 U.S. 547, 587 (1986). Once this burden is met, the opposing party must produce some facts showing there is a genuine issue for trial. *Id.* If a rational trier of fact could not, based on the record as a whole, find in favor of the party opposing summary judgment, then summary judgment is granted in favor of the moving party. *Id.* The Court must view the facts and draw all reasonable inferences in favor of the non-moving party. The Court does not determine if all of the evidence favors one side or the other, but "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In other words, "[s]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact[.]" *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995).

Defendant City of Oak Park has also moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Defs.' Mot. at ¶ 2). Under Rule 12(c), "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (citation omitted). This inquiry "is

the same as a review under Rule 12(b)(6); [a court] must 'construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief.'" *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006) (quoting *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)).  The motion is granted only if "no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Tucker*, 539 F. 3d at 549.

"It is well established that 'Rule 12(c) requires only one action by the district court for the conversion to a summary judgment motion to occur: failure to exclude presented outside evidence.'" *Northville Downs v. Graholm*, 622 F.3d 579, 585 (6th Cir. 2010) (quoting *Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 f.3d 494, 503 (6th Cir. 2006)).  The Sixth Circuit has made clear that a district court "need not actually rely upon materials outside of the pleadings to require the conversion of a Rule 12(c) motion into a motion for summary judgment." *Id.*

### III. ANALYSIS

After the stipulated dismissal of Plaintiffs' claims against Defendant McInerney, only Count VI of Plaintiffs' Amended Complaint, "Deprivation of Civil Rights §1983", remains viable against Defendants City of Oak Park and Officer Bolton.  In the Amended Complaint, Plaintiffs appear to assert that Defendant Officer Bolton's actions violated: (1) Plaintiffs' right to Due Process pursuant to the Fourteenth Amendment; (2) Plaintiffs' right to be free from unreasonable search and seizure pursuant to the Fourth Amendment; and (3) Plaintiffs' right to be guaranteed equal protection under the laws secured by the Fourteenth Amendment.  (*See* Am. Compl. at ¶ 79).

Plaintiffs' motion seeks summary judgment solely on its § 1983 claim based on a violation of the Fourth Amendment. (Pls.' Br. at 1). Therefore, Plaintiffs' summary judgment motion is more accurately described as a "motion for partial summary judgment" and the Court shall refer to it as such. The Court also recognizes that Defendants City of Oak Park and Officer Bolton's motion seeks summary judgment on all of the § 1983 claims set forth against Defendants in Plaintiff's Amended Complaint. However, Plaintiffs failed to respond in their briefing or at oral argument to Defendants' arguments regarding their § 1983 claim based on the Equal Protection Clause. The Court of Appeals for the Sixth Circuit has made clear that "a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (collecting cases). Therefore, the Court finds that Plaintiffs have abandoned their claims against Defendants based on the Equal Protection Clause and the Court need not address those claims.

## A.    Claims against Officer Ryan Bolton

To state a claim pursuant to 42 U.S.C. § 1983, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)). Plaintiffs assert that Defendant Officer Bolton acted while under the color of state law and his actions deprived them of their rights to be free from an unreasonable seizure under the Fourth Amendment and resulted in a denial of Due Process under the Fourteenth Amendment.

8

Pursuant to the Fourteenth Amendment, procedural due process requires "notice and a prior hearing before a state can assist a secured creditor in the repossession of a debtor's property." *Barrett v. Harwood*, 189 F.3d 297, 301 (2d Cir. 1999) (citation omitted). The Fourth Amendment sets forth the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures..." U.S. Const. Amend. IV. The "Fourth Amendment's prohibition of unreasonable seizures extends to seizures of property regardless of whether the possessor has a privacy interest in the property." *Soldal v. Cook Cnty.*, 506 U.S. 56, 62-63 (1992). Property is considered seized "when there is some meaningful interference with an individual's possessory interests in that property." *Id.* at 63. "A constitutional violation occurs only where the seizure is objectively unreasonable, *United States v. Place*, 462 U.S. 696, 701 (1983), a determination that entails a careful balancing of governmental and private interests." *Hensley v. Gassman*, 693 F.3d 681, 688 (6th Cir. 2012) (internal quotation omitted).

The Court recognizes that when a plaintiff makes a claim pursuant to 42 U.S.C. § 1983 for the repossession of a vehicle, the inquiries based on the Fourth and Fourteenth Amendments are the same. *See Meyers v. Redwood City*, 400 F.3d 765, 771 (9th Cir. 2005); *Arnold v. Midwest Recovery*, 2011 WL 309000, at *7 (E.D. Mich. Jan. 27, 2011) (recognizing same); *see also Barrett*, 189 F.3d at 301 (seminal case regarding a debtor's § 1983 due process claim in which the court evaluated the officer's actions during a repossession, and relied upon by the Sixth Circuit in *Hensley* in evaluating a debtor's Fourth Amendment claim regarding a repossession).

In the instant case, Stallings sought to repossess Plaintiffs' vehicle pursuant to Michigan's version of the Uniform Commercial Code. *See* MICH. COMP. LAWS § 440.9609(2).

9

This statute allows "a secured party [to] proceed ... without judicial process if it proceeds without breach of the peace." *See Ansley v. Conseco Fin. Serving Corp.*, 2002 WL 31955217, at *2 (Mich. Ct. App. Dec. 17, 2002). It is "well-established law in this circuit [] that the private creditor who alone repossesses secured collateral does not act under color of state law. Specifically, self-help repossession ... does not constitute state action." *United States v. Colman*, 628 F.2d 961, 963 (6th Cir. 1980) (citation to the UCC omitted). The pertinent inquiry therefore becomes whether Defendant Officer Bolton meaningfully interfered with Plaintiffs' possessory interests such that his participation transformed a private repossession into state action. Indeed, the Sixth Circuit recognizes that when a plaintiff "seeks to hold government actors liable for participation in repossession, state action is usually the central issue." *Hensley*, 693 F.3d at 689.

In *Barrett v. Harwood*, 189 F.3d 297 (2d Cir. 1999), the Second Circuit described cases of this nature as falling along a spectrum of police involvement. *Id.* at 302 ("[N]o bright line has been drawn delineating the exact point at which an officer's presence and activities at the scene of a repossession become state action in aid of the repossession."); *see also Hensley*, 693 F.3d 690-91 (describing *Barrett* as the "most helpful case" in evaluating whether state action has occurred). On one end of the spectrum are those cases in which there is little to no involvement by the police officers in the repossession and no state action is found. *Barrett*, 189 F.3d at 302. On the opposite end of the spectrum are those cases in which a court found the police officers' actions amounted to state action or created an issue of fact for a jury. *Id.* The *Barrett* court relied upon *United States v. Coleman*, 628 F.2d 961 (6th Cir. 1980), at the *de minimus* end of the spectrum. In *Coleman*, the police were merely parked around the corner from where the repossession was occurring and were standing by in case of trouble. *Coleman*, 628 F.2d at 964.

10

Near the middle of the spectrum, where there is more involvement by the police officers but not
enough to constitute state action, the Second Circuit relied upon *Menchaca v. Chrysler Credit
Corp.*, 613 F.2d 507, 510-12 (5th Cir. 1980). *Barrett*, 189 F.3d at 302. In *Menchaca*, the police
officers were summoned after the debtor resisted attempts by the repossessor to take the vehicle.
*Menchaca*, 613 F.2d at 510-12. That court found there was no state action when the officers
advised the debtor that they were there only to "quiet a reported disturbance" but the debtor
claimed the officers had threatened to arrest her if she did not turn over the keys. *Id.* at 510-13.

Finally, at the other end of spectrum, courts have found that as "an officer begins to take a
more active hand in the repossession, and as such involvement becomes increasingly critical",
private repossession is transformed into state action. *Id.* At this far end of the involvement
spectrum the Second Circuit relied upon two cases in which the police participation chilled the
plaintiff's right to object to the repossession such that each case survived summary judgment. In
the first case, *Jones v. Gutschenritten,* 909 F.2d 1208 (8th Cir. 1990), the action survived
summary judgment where the plaintiff observed a police officer standing with and in close
proximity to an individual who was disconnecting the plaintiff's electricity and the officer did
not leave until after the disconnection was complete. *Id.* at 1210-13. In the second case, *Booker
v. City of Atlanta*, 776 F.2d 272 (11th Cir. 1984), issue of state action survived summary
judgment when the police officer arrived with the repossessor and "gave the repossession a
cachet of legality and had the effect of intimidating Booker into not exercising his right to resist,
thus facilitating the repossession." *Id.* at 274. Both of these cases are consistent with the Sixth
Circuit's finding that "numerous state courts cases and secondary authorities have recognized
that an objection, particularly when it is accompanied by physical obstruction, is the debtor's

11

most powerful (and lawful) tool in fending off an improper repossession because it constitutes a breach of the peace requiring the creditor abandon his efforts to repossess." *Hensley*, 693 F.3d at 689; *see Harris v. City of Roseburg*, 664 F.2d 1121, 1127 (9th Cir. 1981) (holding there were genuine issues of material fact regarding whether there may be a deprivation within the meaning of § 1983 when the "officer assists in effectuating a repossession over the objection of a debtor or so intimidates a debtor as to cause him to refrain from exercising his legal right to resist a repossession."); *see also Marcus v. McCollum*, 394 F.3d 813, 816-17 (10th Cir. 2004) (finding issues of fact precluded summary judgment on § 1983 claim where plaintiffs alleged the officers advised the plaintiffs to stop their interference with a vehicle repossession, advising the plaintiffs to "let them do what they're going to do and take it up in small claims court", and threatening plaintiffs with possible jail if the situation escalated).

In the instant case, viewing the record in the light most favorable to Plaintiffs, Defendant Officer Bolton arrived at Plaintiff Anderson's house before the repossessor, along with a total of three police cars, and the officers remained throughout the entire repossession process. Defendant Officer Bolton and the unidentified second officer on the porch were informed by Plaintiff Anderson's mother that there was an on-going dispute regarding the lease arrangement and financing. However, Defendant Officer Bolton advised Plaintiff's mother that the repossession was inevitable (Bolton Dep. at 24), and also stated that "it's a civil issue, it's not a criminal issue. You've got to get a hold of an attorney if you want to fight the repossession and everything else..." (Bolton Dep. at 26:3-9). Plaintiff Anderson also testified that Defendant Officer Bolton requested that Plaintiff Anderson give him the keys to her vehicle. Finally, Defendant Officer Bolton described his own involvement as "assist[ing] in repossession of listed

12

2010 Dodge Charger at listed address." (Ex. 3, Police Report at 2).

The Court finds that this case is most factually analogous to *Hensley*. Specifically, in *Hensley*, one of the officers advised the plaintiffs that he did "not care" that the vehicle was not supposed to be repossessed and that she could "sort things out" in the morning. *Hensley*, 693 F.3d at 684-85. The officer also told the plaintiff that the repossessor "still had to take the Buick." *Id.* at 685. At this point, one plaintiff got into the vehicle, locked the doors and started to drive with the tow truck attached to the vehicle. *Id.* The plaintiff ignored the officers continued instructions to stop and at the officer's direction the tow truck towed the car with the plaintiff inside to the street. *Id.* Eventually, an officer broke the window of the vehicle with a hammer (after the butt of his handgun could not accomplish the task). *Id.* The plaintiff was then pulled from the vehicle and told to retrieve her possessions from it before it was towed away by the repossessor. *Id.*

In *Hensley*, the Sixth Circuit eventually found the officers' action constituted state action because the officers conceded that ordering the repossessor to tow the vehicle to the road was state action, and further that the action of breaking the car window was not only state action but also "instrumental" in the success of the repossession. *Id.* at 692. However, the Sixth Circuit also explained that the police officers' actions between the time of their arrival and the time when the plaintiff locked herself into the vehicle constituted "more than mere police presence and reflect circumstances other courts have found indicative of state action". *Hensley*, 693 F.3d at 691. Indeed, the Sixth Circuit noted with approval five circumstances that could support a finding of state action in *Hensley*: (1) the officers arrived at the plaintiffs' residence with, and at the request of the repossessor; (2) an officer ordered one of the plaintiffs to move during his

attempt to "thwart the repossession"; (3) the officers ignored the plaintiff's request to leave the property; (4) the officer told one of the plaintiff's that the repossessor was taking the vehicle; and (5) the officer "ignored both Sheila's protest and her explanation and told Sheila that [the repossessor] was still going to take the Buick." *Id.*

In the present case, similar to certain actions of the police officers *Hensley*, Defendant Officer Bolton and the other unnamed officers arrived with the repossessor and also stayed throughout the entire process. This fact alone can give rise to a genuine issue of material fact regarding whether Defendant Officer Bolton's involvement in the repossession amounted to state action. Because "[e]ven without active participation courts have found that an officer's conduct can facilitate a repossession if it chills the plaintiff's right to object." *Hensley*, 693 F.3d at 689. Indeed, other courts have found that "[a] police officer's arrival and close association with the creditor during the repossession may signal to the debtor that the weight of the state is behind the repossession and that the debtor should not interfere by objecting." *Id.* at 690 (citing *Booker v. City of Atlanta*, 776 F.2d at 274 and *Jones*, 909 F.2d at 1213).

Further, in the present action, Defendant Officer Bolton was apprised by Plaintiff Anderson's mother that there was an on-going dispute with the dealership regarding the lease. In response, just like the officer in *Hensley*, Defendant Officer Bolton advised the repossession was inevitable and that the only remedy was to call a lawyer because it was a "civil issue". *See Marcus*, 394 F.3d at 822-23 (finding issues of fact remained when officers may have precluded the property owner from exercising her right to prevent the repossession.) Defendant Officer Bolton also asked Plaintiff Anderson to give him the keys to the vehicle which may have further solidified the perception that any objection was futile. Moreover, such an act could be construed

14

as an affirmative act or compulsion by Defendant Officer Bolton that facilitated the repossession. *See Coleman*, 628 F.2d at 964 (recognizing that there can be no state action unless the state "actually compels the action").

"This area of the law is particularly fact-sensitive, so the circumstances must be 'examined in their totality.'" *Marcus*, 394 F.3d at 819 (citation omitted). Here, crediting the Plaintiffs' version of the facts that Defendant Officer Bolton compelled Plaintiff Anderson to hand over her keys to him, in addition to the undisputed facts that there was a heavy police presence throughout the entire repossession and Defendant Officer Bolton advised Plaintiff Anderson and her mother that the repossession was inevitable and that their only remedy was go find an attorney, a reasonable jury could find that Defendant Officer Bolton's actions constituted more than a peace keeping presence and rose to a level of "state action". Indeed, Defendant Officer Bolton's arguments that he was merely a peacekeeper are inapposite to Plaintiffs' version of events.

Further, the Court also finds that genuine issues of material fact exist as to whether such a seizure was "unreasonable" as required by the Fourth Amendment. *See Soldal*, 506 U.S. at 549 ("reasonableness is still the ultimate standard" under the Fourth Amendment); *Hensley*, 693 F.3d at 691. "The reasonableness determination will reflect a careful balancing of governmental and private interests." *Soldal*, 506 U.S. at 549. In the instant action, there was no court order that authorized the repossession.[4] Defendant Officer Bolton testified that he does not remember what paperwork Stallings possessed, however, Defendant Officer Bolton told Plaintiff Anderson and

---

[4] The Supreme Court noted that where there was a court order a "showing of unreasonableness on these facts would be a laborious task indeed." *Soldal*, 506 U.S. at 549.

15

her mother more than once that the repossession was a civil matter. Therefore, Defendant Bolton knew: (1) the matter was a civil matter; (2) Stallings represented he had authority to take the vehicle; (3) there is a genuine issue of fact regarding whether Plaintiff Anderson's ability to object was chilled and whether she was compelled to hand over her keys; and (4) there is nothing on the record to indicate Defendant Officer Bolton had any evidence to bolster Stallings claims. The Court finds that given these facts "a reasonable trier of fact could certainly conclude that the seizure was unreasonable." *Hensley*, 693 F.3d at 692 (finding a jury question as to the reasonableness of the seizure where the officer was aware of nearly identical facts).

Therefore, both Plaintiffs' and Defendant Officer Bolton's motions for summary judgment must be denied.

**B.      Qualified Immunity**

Defendant Officer Bolton next argues that even if his actions constituted "state action" and a constitutional violation is found, he is entitled to qualified immunity with respect to Plaintiffs' Fourth and Fourteenth Amendment claims because the rights were not clearly established.[5]

The doctrine of qualified immunity generally protects "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

---

[5] The Court notes Plaintiffs have not distinguished among the Defendants in regards to qualified immunity. Indeed, the Plaintiffs collapse their arguments to include both Defendants Officer Bolton and City of Oak Park in their qualified immunity analysis. However, Defendant City of Oak Park is not entitled to qualified immunity. *See Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000) ("Counties and other local governments – while 'persons' for the purpose of 1983 liability in the sense that they can be sued – do not enjoy the defenses of absolute and qualified immunity that are available to human defendants used in their individual capacities.")

have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of qualified

immunity is to "shield the official from suit altogether, saving him or her from the burdens of

discovery and costs of trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Qualified immunity

protects "all but the plainly incompetent or those who knowingly violate the law." *Humphrey v.

Mabry*, 482 F.3d 840, 847 (6th Cir. 2007). "'Once the qualified immunity defense is raised, the

burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity.'"

*Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010) (quoting *Silberstein v. City of Dayton*, 440

F.3d 306, 311 (6th Cir. 2006)).

It is well settled that courts in this district apply "a two-step inquiry to determine qualified

immunity, which considers (1) whether the defendant violated a constitutional right; and (2)

whether that right was clearly established."[6] *Hensley*, 693 F.3d at 687; *see also Saucier v. Katz*,

533 U.S. 194, 201 (2001).

The order of the qualified immunity analysis is no longer mandatory and courts are

permitted to use their discretion in deciding which of the two steps of the qualified immunity

analysis should be addressed first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, the

Court has already determined that genuine issues of material fact remain regarding whether

Defendant Officer Bolton's actions constitute state action and violate Plaintiffs' Fourth and

---

[6] The Sixth Circuit has also recognized a third inquiry is required in certain cases, which is "whether the plaintiff has offered sufficient evidence to indicate what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Id.* at 687 n. 3 (quoting *Feathers v. Aey*, 319 F.3d 843, 846 (6th Cir. 2003)); *see also Estate of Carter v. City of Detroit*, 408 F.3d 305, 301 n. 2 (th Cir. 2005) (explaining that some panels of the court simply apply the two-step approach as set forth in *Saucier* while "the three-step approach may in some cases increase the clarity of the proper analysis"); *Rodgers v. 36th Dist. Court*, 529 F. App'x 642, 646-47 (6th Cir. 2013) (recognizing same).

17

Fourteenth Amendment rights. Therefore, the Court now turns to whether these constitutional rights were clearly established in December 2010. *See Meyers*, 400 F.3d at 770-71 (explaining the Fourth and Fourteenth Amendments inquiries are "for all relevant purposes, the same" in § 1983 case involving a repossession).

"A constitutional right is clearly established where its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right'" – in other words, where 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Daily Servs., LLC v. Valentino*, --- F.3d ---, 2014 WL 2883875, * 5 (6th Cir. 2014) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Sixth Circuit has explained that "[a]n action's unlawfulness must be apparent in light of pre-existing law, but the very action in question need not previously have been held unlawful." *Id.* (citation omitted). "[A]n action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs." *Hensley*, 693 F.3d at 687.

Defendant Officer Bolton argues that a reasonable officer would have been unaware in December 2010 that "advising a vehicle owner of a third party's intent to repossess her vehicle and asking whether she wants to provide the keys in order to avoid unnecessary damage was an unreasonable seizure of a vehicle in violation of the 4th or 14th Amendments." (ECF No. 53, Defs.' Reply at 4-5). However, Defendant Officer Bolton's analysis is too narrow and misconstrues (or simply omits) critical facts. First, Defendant Officer Bolton's factual scenario does not address his instructions to Plaintiff Anderson and her mother than the repossession would be happening regardless of any dispute with the finance company and that their only remedy was to call a lawyer. Further, as examined *supra*, the fact that the three police cars

18

arrived before, and left after, the repossession could be found to have given the entire process a "cachet of legality" and have chilled any possible protest from Plaintiff Anderson. Finally, there remains a genuine issue of material fact over whether Plaintiff Anderson was made to hand over her keys to Defendant Officer Bolton.

Further, the Sixth Circuit has "long recognized that individuals have a 'clearly established right not to have property in which [they] enjoy[] a lawful possessory interest seized by state action in violation of the constitution." *Hensley*, 693 F.3d at 694 (quoting *Haverstick v. Financial Fed. Credit*, 32 F.3d 989, 994 (6th Cir. 1994)); *see also Soldal*, 505 U.S. 56 (1992) (establishing this right). The Sixth Circuit has found that, since the *Soldal* decision in 1992, it has been clearly established law:

> that when police neither encourage nor direct a private individual during a repossession, but merely "stand by in case of trouble," there is no liability. However, in cases such as here where officers take an active role in a seizure or eviction, this Circuit has held they may no longer be entitled to qualified immunity.

*Cochran v. Gilliam*, 656 F.3d 300, 310 (6th Cir. 2011) (underlying events in *Cochran* transpired in 2008, predating the present action) (internal citations omitted). In *Cochran*, the Sixth Circuit noted that its application of the *Soldal* decision was consistent with other circuits and found that generally "officers are not state actors during a private repossession if they act only to keep the peace, but they cross the line if they affirmatively intervene to aid the repossessor." *Id.* (citing *Marcus*, 394 F.3d at 818-19. The Sixth Circuit then cited to the Eleventh Circuit's 1985 decision in *Booker v. City of Atlanta*, 776 F.2d at 274, noting that the presence of police during a repossession could "intimidate the plaintiff into not exercising his right to resist, thus facilitating the repossession. Even if unintended, such an effect could constitute police 'intervention and

19

aid' sufficient to establish state action." *Cochran*, 656 F.3d at 310.

Despite Defendant Officer Bolton's arguments to the contrary, this abstraction of the issue at hand is not too high a level of generality. Indeed, the Sixth Circuit used this exact inquiry when addressing whether police officers were entitled to qualified immunity in analogous circumstances in the *Hensley* and *Cochran* decisions.

Defendant Officer Bolton also argues that he is entitled to qualified immunity because it was an objectively reasonable error to rely upon Stalling's representation that he had a court order for the repossession and relies upon *Hensley*. It is well settled that qualified immunity would shield an official from their objectively reasonable mistakes "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Hensley*, 693 F.3d at 687 (quoting *Pearson*, 555 U.S. at 231). However, in the instant action, Defendant Officer Bolton clarified in this testimony that Stallings "stated he had paperwork for repossession of the vehicle. I'm not sure what actual paperwork that he actually had." (Bolton Dep. at 30). Further, viewing the facts in a light most favorable to Plaintiffs, Stallings testified that he produced the paperwork he had (a letter from a dealership) to Defendant Officer Bolton before Defendant Officer Bolton knocked on Plaintiff Anderson's door. (Stallings Dep. at 19). Moreover, Defendant Officer Bolton testified repeatedly that he knew the repossession was a "civil issue" and his own police report indicates on its face that the "verified offense" was a "Civil Matter - other". (Ex. 3, Police Report).

In *Hensley*, the Sixth Circuit rejected the lower court's conclusion that the officers were entitled to qualified immunity because they reasonably, but mistakenly, believed there was a court order but never verified that fact. *Hensley*, 693 F.3d at 694. The Sixth Circuit explained

20

that such a finding was contrary to the record where the officers testified they knew there was no court order and also finding there was no mistake, stating:

> Here, however, there was no "mistake" – the Deputies simply declined to review [the repossessor's] order. Finally, even mistaken reliance on [that] order would not have been reasonable, because it was simply an order from the creditor to [the repossessor] to repossess the vehicle. As such, the creditor's order carried no more weight than [the repossessor's] own word which, in the context of this private repossession, the Deputies could not accept over [the debtor's] competing claim.

*Id.*

This reasoning is easily applied to the current facts. In the instant action, Defendant Officer Bolton's argument that he "mistakenly" relied upon Stallings' representation that he had a court order to repossess the vehicle is contrary to the record. Further, just like in *Hensley*, even assuming Defendant Officer Bolton erroneously relied upon the paperwork Stallings did possess, that reliance was not reasonable under the circumstances.

In summary, Defendant Officer Bolton testified that he was present at the repossession to "stand by and assist if there were any problems." (Bolton Dep. at 21). However, viewing the record in a light most favorable to Plaintiffs, the record could support an inference that Defendant Officer Bolton assumed, without verifying, that the repossessor had a repossessory right to the vehicle, compelled Plaintiff Anderson to give him her keys, and also advised Plaintiff Anderson and her mother that the car would be towed regardless of any disputes that were on-going. A reasonable jury could find that given the totality of the circumstances, that a reasonable officer would have been aware that these acts (or the mere presence of three police cars during the entire repossession) violated the Plaintiffs' established constitutional rights. Therefore, where pertinent issues of material fact persist in the record, the Court cannot find as a matter of

law that Defendant Officer Bolton is entitled to qualified immunity. *See e.g.*, *Marcus*, 394 F.3d at 824 (finding issues of material fact at summary judgment stage precluded a finding the officers were entitled to qualified immunity).

**C.      Claims against Defendant the City of Oak Park**

Defendants argue that Plaintiffs have failed to state a claim against Defendant the City of Oak Park pursuant to Federal Rule of Civil Procedure 12(c) and 56. However, as Plaintiffs' response and Defendants' Reply rest upon deposition testimony outside the scope of Plaintiffs' Amended Complaint, the Court shall treat this motion as a motion for summary judgment.

A municipality may be held liable for a constitutional violation under § 1983 if a municipal custom or policy is the motivating force behind the violation. *See Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978) (finding that the drafters of § 1983 intended only to impose liability on a government that "causes" an employee to violation another persons's rights pursuant to an official policy). To prevail on such a claim, the plaintiff must evidence that the alleged violation of his constitutional rights was caused by a municipal policy or custom. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). "That is to say, the liability of counties and other local governments under § 1983 depends solely on whether the plaintiff's constitutional rights have been violated as a result of a 'policy' or 'custom' attributable to the county or local government." *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). "A municipality can be shown to have a 'custom' causing constitutional violations, even if that custom was not formally sanctioned, provided that the plaintiff offers proof of policymaking officials' knowledge and acquiescence to the established practice." *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 389 (1989)

(affirming that a municipality may be "liable under § 1983 only where the municipality itself causes the constitutional violation at issue" and that the policy is the "moving force [behind] the constitutional violation").

The Sixth Circuit has identified four ways a plaintiff may prove the existence of a municipality's illegal custom or practice:

> (1)    the existence of a clear and persistent pattern of illegal conduct;
>
> (2)    notice or constructive notice on the part of the defendant;
>
> (3)    the defendant's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and
>
> (4)    that the defendant's custom was the 'moving force' or direct causal link in the constitutional deprivation.

*Thomas*, 398 F.3d at 429 (citation and internal alterations omitted). Where there is no formal policy, the pertinent inquiry becomes whether there is a policy or custom that although not explicitly authorized "is so permanent and well settled as to constitute a custom or usage with the force of law." *Jones v. Muskegon County*, 625 F.3d 935, 946 (6th Cir. 2010) (citation omitted).

In the instant case, Plaintiffs do not evidence a "persistent pattern" of conduct nor do Plaintiffs argue that Defendant City of Oak Park had notice of Defendant Bolton's actions or that his actions had its tacit approval. Plaintiffs also cannot show that any custom or policy of Defendant City of Oak Park was the "moving force" behind the constitutional deprivation. Rather, Plaintiffs rely solely upon the testimony of the Director of Public Safety for the City of Oak Park, Steve Cooper, to establish that there is no formal policy regarding repossessions and to establish that there was an informal policy that officers were there "to keep the peace and

23

mediate ... the [repossession] situations to a point that we can."[7]  (ECF No. 51, Pls.' Resp. Ex. D,

Cooper Dep. at 12).  Plaintiffs then argue that Defendant Bolton facilitated the repossession in

this action in *contravention* of that general policy.  (Pls.' Resp. at 10).

Plaintiffs' argument is without merit and without any citation to case law.  Indeed,

Plaintiffs fail to show how an illegal city policy or custom can be evidenced by a single officer's

actions that violate the legal policy.  Further, to the extent Plaintiffs attempt to argue the mere

presence of other police officers at the repossession evidences a policy or custom, this argument

is also unsupported by the record or case law.

For all these reasons, the Court finds Plaintiffs' § 1983 claim against Defendant City of

Oak Park fails and must be dismissed.

---

[7] Steve Cooper's testimony in relevant part states:

> We have no legal authority to enforce noncriminal issues.  It would be considered
> a civil matter.  In those matters what we could do is we could offer our assistance
> to stand by, just to make sure there's no physical confrontation or an incident that
> turns into a physical confrontation.  We're there strictly, like I said, to keep the
> peace and mediate, if that's I guess an acceptable word, the situations to a point
> that we can.

(ECF No. 51, Pls.' Resp., Ex. D, Cooper Dep. at 12).  Defendant Bolton confirmed this "general
rule" in his testimony, stating that the role of the officer during a repossession is to "stand by"
and "mediate if there's a problem or to stand by and, you know, hopefully to prevent or hopefully
there is no problem ...".  (Bolton Dep. at 9:9-13).

## IV.   CONCLUSION

Therefore, the Court DENIES Plaintiffs' motion for partial summary judgment (ECF No. 44), GRANTS IN PART and DENIES IN PART Defendants' motion for summary judgment (ECF No. 46), and DISMISSES this Defendant City of Oak Park from this action WITH PREJUDICE.

SO ORDERED.

Paul D. Borman
United States District Judge

Dated:   SEP 0 8 2014

25